**WO**

# IN THE UNITED STATES DISTRICT COURT
# FOR THE DISTRICT OF ARIZONA

| | |
|---|---|
| Tammy Leann Winton, | No. CV-21-00872-PHX-JAT |
| Plaintiff, | **ORDER** |
| v. | |
| Commissioner of Social Security Administration, | |
| Defendant. | |

Pending before the Court is Plaintiff Tammy Leann Winton's appeal from the Commissioner of the Social Security Administration's ("SSA") final decision denying social security disability benefits. (Doc. 1). The appeal is fully briefed (Doc. 18, Doc. 19, Doc. 20), and the Court now rules.

## I. BACKGROUND

The issues presented in this appeal are whether the ALJ committed legal error in determining Plaintiff was not disabled under Section 1614(a)(3)(A) of the Social Security Act and whether substantial evidence of record supports this determination. (Doc. 18 at 1, 8).

### a. Factual Overview

Plaintiff was 52 years old on her alleged disability onset date of December 2, 2016. (Doc. 18 at 3, 1). She had an 11th grade education and past relevant work as a short order cook, peddler, and vegetable vendor. (*Id.* at 3). On June 20, 2018, Plaintiff filed an application for social security disability benefits. (*Id.* at 1). As relevant here, Plaintiff

suffered from obesity, degenerative disc disease and facet arthropathy, chronic kidney disease - stage III, nephropathy, systemic ANCA vasculitis, and renal vasculitis. (Doc. 14-3 at 21). Plaintiff's claim was denied initially on December 28, 2018, and upon reconsideration on May 22, 2019. (*Id.* at 19). Plaintiff filed a request for a hearing before an ALJ, which occurred via telephone on October 21, 2020. (*Id.*) The ALJ issued a decision on December 4, 2020, finding that based on the June 20, 2018, social security benefit application, Plaintiff was not disabled under Section 1614(a)(3)(A) of the Social Security Act. (*Id.* at 32). The SSA Appeals Council denied Plaintiff's request for review of the ALJ's decision and adopted this as the agency's final decision. (Doc. 1 at 5).

### a. The SSA's Five-Step Evaluation Process

To qualify for social security disability insurance benefits, a claimant must show that she "is under a disability." 42 U.S.C. § 423(a)(1)(E). To be "under a disability," the claimant must be unable to engage in "substantial gainful activity" due to any medically determinable physical or mental impairment. *Id.* § 423(d)(1). The impairment must be of such severity that the claimant cannot do her previous work or any other substantial gainful work within the national economy. *Id.* § 423(d)(2). The SSA has created a five-step sequential evaluation process for determining whether an individual is disabled. *See* 20 C.F.R. § 404.1520(a)(1). The steps are followed in order, and each step is potentially dispositive. *See id.* § 404.1520(a)(4).

At step one, the ALJ determines whether the claimant is engaging in "substantial gainful activity." *Id.* § 404.1520(a)(4)(i). "Substantial gainful activity" is work activity that is (1) "substantial," i.e., doing "significant physical or mental activities;" and (2) "gainful," i.e., usually done "for pay or profit." 20 C.F.R. § 416.972(a)-(b). If the claimant is engaging in substantial gainful work activity, the ALJ will find the claimant is not disabled. *Id.* § 404.1520(a)(4)(i).

At step two, the ALJ determines whether the claimant has "a severe medically determinable physical or mental impairment" or severe "combination of impairments." *Id.* § 404.1520(a)(4)(ii). To be "severe," the claimant's impairment must "significantly limit"

the claimant's "physical or mental ability to do basic work activities." *Id.* § 404.1520(c). If the claimant does not have a severe impairment or combination of impairments, the ALJ will find the claimant is not disabled. *Id.* § 404.1520(a)(4)(ii).

At step three, the ALJ determines whether the claimant's impairment(s) "meets or equals" an impairment listed in Appendix 1 to Subpart P of 20 C.F.R. Part 404. *Id.* § 404.1520(a)(4)(iii). If so, the ALJ will find the claimant is disabled, but if not, the ALJ must assess the claimant's "residual functional capacity" ("RFC") before proceeding to step four. *Id.* §§ 404.1520(a)(4)(iii), 404.1520(e). The claimant's RFC is her ability to do physical and mental work activities "despite [her] limitations," based on all relevant evidence in the case record. *Id.* § 404.1545(a)(1). To determine RFC, the ALJ must consider all the claimant's impairments, including those that are not "severe," and any related symptoms that "affect what [the claimant] can do in a work setting." *Id.* §§ 404.1545(a)(1)-(2).

At step four, the ALJ determines whether the claimant has the RFC to perform the physical and mental demands of "[her] past relevant work." *Id.* §§ 404.1520(a)(4)(iv), 404.1520(e). "Past relevant work" is work the claimant has "done within the past 15 years, that was substantial gainful activity." *Id.* § 404.1560(b)(1). If the claimant has the RFC to perform her past relevant work, the ALJ will find the claimant is not disabled. *Id.* § 404.1520(a)(4)(iv). If the claimant cannot perform her past relevant work, the ALJ will proceed to step five in the sequential evaluation process.

At step five, the last in the sequence, the ALJ considers whether the claimant "can make an adjustment to other work," considering her RFC, age, education, and work experience. *Id.* § 404.1520(a)(v). If so, the ALJ will find the claimant not disabled. *Id.* If the claimant cannot make this adjustment, the ALJ will find the opposite. *Id.*

### b. The ALJ's Application of the Factors

Here, at step one, the ALJ concluded that Plaintiff had "not engaged in substantial gainful activity since June 20, 2018, the application date." (Doc. 14-3 at 21).

At step two, the ALJ determined that the following impairments were "severe":

obesity, degenerative disc disease and facet arthropathy, chronic kidney disease - stage III, nephropathy, systemic ANCA vasculitis, and renal vasculitis. (*Id.* at 21). The ALJ found that Plaintiff's remaining physical and mental impairments did "not cause more than a minimal restriction in [Plaintiff's] ability to work" and were therefore "not severe." (*Id.*)

At step three, the ALJ concluded that Plaintiff does not have an impairment or combination of impairments that meet or equal the severity of any impairment listed in 20 C.F.R. Part 404, Subpart P, Appendix 1. (*Id.* at 25). The ALJ determined that Plaintiff has the RFC to perform light work as defined in 20 C.F.R. § 416.967(b) "except she can frequently balance, and occasionally stoop, kneel, crouch, crawl, and climb ramps and stairs." (*Id.* at 26). The ALJ also determined that Plaintiff "can never climb ladders, ropes, or scaffolds, and can tolerate frequent exposure to extreme heat and unprotected heights." (*Id.*)

At step four, the ALJ determined that Plaintiff can perform past relevant work as a short order cook, reasoning that this work does not require "work-related activities precluded by [Plaintiff's] residual functional capacity." (*Id.* at 31). Accordingly, the ALJ did not proceed to step five of the evaluation and found that Plaintiff has not been under a disability since June 20, 2018, the date Plaintiff filed her disability benefits application. (*Id.* at 32).

**II.     LEGAL STANDARD**

This Court may not set aside a final denial of disability benefits unless the ALJ decision is "based on legal error or not supported by substantial evidence in the record." *Revels v. Berryhill*, 874 F.3d 648, 654 (9th Cir. 2017) (quoting *Benton ex rel. Benton v. Barnhart*, 331 F.3d 1030, 1035 (9th Cir. 2003)). Substantial evidence refers to "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Id.* (quoting *Desrosiers v. Sec'y of Health & Human Servs.*, 846 F.2d 573, 576 (9th Cir. 1988)). The Court, in its review, must consider the record in its entirety, "weighing both the evidence that supports and evidence that detracts from the [ALJ's] conclusion." *Id.* (quoting *Garrison v. Colvin*, 759 F.3d 995, 1009 (9th Cir. 2007)).

The ALJ—not this Court—is responsible for resolving ambiguities, resolving conflicts in medical testimony, determining credibility, and drawing logical inferences from the medical record. *See Andrews v. Shalala*, 53 F.3d 1035, 1039 (9th Cir. 1995) (citing *Magallanes v. Bowen*, 881 F.2d 747, 750 (9th Cir. 1989); *Gallant v. Heckler*, 753 F.2d 1450, 1453 (9th Cir. 1984)). Therefore, when the evidence of record could result in more than one rational interpretation, "the ALJ's decision should be upheld." *Orn v. Astrue*, 495 F.3d 625, 630 (9th Cir. 2007). Further, this Court may only review the reasons the ALJ provides in the disability determination; it "may not affirm the ALJ on a ground upon which he did not rely." *Garrison*, 759 F.3d at 1010.

### III. DISCUSSION

Plaintiff raises two claims of error in the ALJ's analysis: (1) the ALJ did not afford sufficient weight to the medical opinion of treating rheumatologist, Dr. Ravi Bhalla; and (2) no substantial evidence supports the ALJ's determination of Plaintiff's RFC, because the ALJ did not correctly apply the regulatory standards of 20 C.F.R. § 416.920c in considering Dr. Bhalla's opinion.

#### a. Medical Opinion

Plaintiff argues that the ALJ erred in failing to afford adequate weight to Dr. Bhalla's medical opinion. (Doc. 18 at 1, 8). Dr. Bhalla began treating Plaintiff on October 26, 2018, and Plaintiff had six appointments with Dr. Bhalla over approximately one year. (*Id.* at 12–13). Though not always citing to the record using Dr. Bhalla's name, the ALJ cites to Dr. Bhalla's treatment records eight times in his discussion of Plaintiff's medical evidence. (Doc. 14-3 at 29, 30). For example, the ALJ refers to several of the Plaintiff's appointments with Dr. Bhalla by noting that in "every visit … through September 2019, [Plaintiff] demonstrated unremarkable physical examinations without any swelling, despite allegations of increased hip and back joint pain." (Doc. 14-3 at 11, citing Doc. 14-10 at 136, 140, 143, 147).

As the ALJ noted, in September 2019, Dr. Bhalla completed an assessment form in which he indicated that Plaintiff could occasionally lift and carry less than ten pounds,

Case 2:21-cv-00872-JAT   Document 21   Filed 06/24/22   Page 6 of 13

stand and/or walk for 15 minutes, and sit for 30 minutes in an eight-hour workday. (Doc. 14-3 at 31). In the assessment form, Dr. Bhalla also indicated that Plaintiff's impairments were severe enough to "constantly" interfere with her concentration and attention; Plaintiff's abilities to grasp, turn, twist, reach, and finely manipulate were limited; and Plaintiff's impairments or treatments would cause her to miss more than four workdays monthly. (*Id.* at 31).

> The ALJ addressed Dr. Bhalla's opinion as follows:
>> The undersigned … concludes that this opinion is unpersuasive, as it is overly restrictive and unsupported by the mental status examinations, physical examinations, and reports to her [medical] providers. The claimant admitted she shopped in stores, did the laundry, prepared simple meals, had no problem with her personal care, and left her house every day. [(Doc. 14-7 at 12, 15; Doc. 14-9 at 122)]. Furthermore, as recent as July 2020, the claimant's balance remains normal, and she had a normal gait and her attention and thought process were unimpaired. [(Doc. 14-10 at 104)]. Although she experienced intermittent fatigue [(Doc. 14-12 at 22; Doc. 14-15 at 39)], she was able to independently attend to personal care without a problem and alleged she could stand for 15 minutes before needing a rest [(Doc. 14-7 at 48)]. Accordingly, this opinion is not supported by the evidence, and therefore, unpersuasive.

(Doc. 14-3 at 31).

Further, the ALJ considered the medical opinion of State Agency Medical Consultant, Dr. M. Gleason (*Id.* at 30). Dr. Gleason opined that Plaintiff has exertional and postural limitations as follows:

> [Plaintiff] could lift and carry 20 pounds occasionally and 10 pounds frequently, stand and/or walk 6 hours in an 8-hour workday, and sit for 6 hours in an 8-hour workday. She can occasionally climb ramps and stairs, stoop, kneel, crouch and crawl, and can frequently balance. [Plaintiff] can never climb ladders, ropes or scaffolds, should avoid concentrated exposure to extreme head and hazards.

(*Id.*) The ALJ found that Dr. Gleason's opinion was persuasive, "as the physical

examinations, observations of providers and claimant's allegations corroborate" Dr. Gleason's opinion. (*Id.*)

Courts in this circuit previously distinguished among treating physicians, examining physicians, and non-examining physicians, generally giving the greatest weight to the opinions of treating physicians. *See Lester v. Chater*, 81 F.3d 821, 830 (9th Cir. 1995). This distinction was referred to as the "treating physician rule." *See Regula v. Delta Family-Care Survivorship Plan*, 266 F.3d 1130, 1139 (9th Cir. 2001), *cert. granted*, *vacated sub nom. Regula v. Delta Family-Care Disability & Survivorship Plan*, 539 U.S. 901 (2003). However, "in March of 2017, the [SSA] amended their regulations to abrogate the treating physician rule, among other changes." *Alonzo v. Comm'r of Soc. Sec. Admin.*, No. CV-18-08317-PCT-JZB, 2020 WL 1000024, at *3 (D. Ariz. Mar. 2, 2020) (citing *Revisions to Rules Regarding the Evaluation of Medical Evidence*, 82 Fed. Reg. 5844-01, 2017 WL 168819, at *5852–57 (Jan. 18, 2017)). The amended regulations stipulate that the ALJ "will not defer or give any specific evidentiary weight, including controlling weight, to any medical opinion(s) or prior administrative medical finding(s), including those from … medical sources." 20 C.F.R. §§ 404.1520c, 416.920c. Claims filed on or after March 27, 2017, must adhere to the amended regulations. (*Id.*)

As discussed above, the ALJ, not the reviewing court, is responsible for resolving ambiguities and conflicts in medical testimony and the medical record. *See Andrews*, 53 F.3d at 1039. Therefore, when the evidence of record could result in more than one rational interpretation, "the ALJ's decision should be upheld." *Orn*, 495 F.3d at 630.

Given the amended SSA regulations regarding treating physician opinions, Dr. Bhalla's medical opinion is of equal weight to non-treating physician opinions. Here, to find the ALJ improperly relied on Dr. Gleason's opinion instead of Dr. Bhalla's, this Court must find that the ALJ's determination that Dr. Gleason's opinion is persuasive and Dr. Bhalla's opinion is unpersuasive is unsupported by substantial evidence on record or that the ALJ opinion contains a harmful legal error in its analysis. This Court finds no materially harmful error in the ALJ's decision to reject Dr. Bhalla's opinion and further finds that the

ALJ's opinion is supported by substantial evidence in the record.

Substantial evidence supports the ALJ's finding that the medical evidence on record corroborates and is consistent with Dr. Gleason's medical opinion. (Doc. 14-3 at 12); *see Trevizo v. Berryhill*, 871 F.3d 664, 675 (9th Cir. 2017) ("The ALJ can meet his burden by setting out a detailed and thorough summary of the facts and conflicting clinical evidence, stating his interpretation thereof, and making findings.") (quotations omitted). In evaluating the medical opinions in the record, the ALJ used the standard stated in 20 C.F.R. § 404.1520c, considering the supportability and consistency factors laid out therein. (Doc. 14-3 at 12-13); *see* 20 C.F.R. § 404.1520c(c). For example, the ALJ stated Dr. Gleason's opinion regarding Plaintiff's exertional and postural limitations was persuasive because the record supports it. (Doc. 14-3 at 30). To show this, the ALJ highlighted diagnostic imaging results from a March 2018 MRI showing "multilevel facet hypertrophy," "disc osteophyte complex," and "mild disc bulge" with "significant nerve compression," which "supported [Dr. Gleason's opined] exertional limits." (*Id.*) As another example, ALJ noted that during a medical examination in November 2018, Plaintiff "maintained a normal station and gait and motor strength of 5/5 throughout," consistent with Dr. Gleason's opinion that Plaintiff can "stand and/or walk 6 hours in an 8-hour workday." (*Id.*)

In contrast, the ALJ found that Dr. Bhalla's opinion was unpersuasive, because it was "overly restrictive" compared to other "mental status examinations, physical examinations and [Plaintiff's] reports to her [medical] providers." (Doc. 14-3 at 31). For example, the ALJ noted that as recently as July 2020, Plaintiff's "attention and thought process were unimpaired." (*Id.*) This was inconsistent with Dr. Bhalla's assertion that Plaintiff's impairments were severe enough to "constantly" interfere with her attention and concentration. (*Id.*) The ALJ also notes that Plaintiff indicated "she shopped in stores, did the laundry, prepared simple meals, had no problem with her personal care, and left her house every day," and that, despite "intermittent fatigue," she was able to "stand for 15 minutes before needing a rest," and as recent as July 2020, she had a normal gait and balance. (*Id.*) This documented evidence from the medical record is inconsistent with Dr.

Bhalla's opinion that Plaintiff could stand or walk for only "15 minutes in an 8-hour workday" and sit for only "30 minutes in an 8-hour workday." (*Id.*) It is also inconsistent with Dr. Bhalla's opinion that Plaintiff was "limited" in her ability to "grasp, turn, twist, and perform fine manipulation or reaching." (*Id.*)

Accordingly, this Court finds that the ALJ did not commit materially harmful legal error in relying on Dr. Gleason's opinion instead of Dr. Bhalla's opinion, as the ALJ reasonably determined that Dr. Gleason's medical findings were supported by and consistent with the medical record and Dr. Bhalla's findings were not. *See Andrews*, 53 F.3d at 1039-40. ("The ALJ is responsible for determining credibility, resolving conflicts in medical testimony, and for resolving ambiguities. We must uphold the ALJ's decision where the evidence is susceptible to more than one rational interpretation.") (citations omitted).

### b. Supportability and Consistency Factors

Plaintiff argues that no substantial evidence supports the ALJ's determination of Plaintiff's RFC. (Doc. 18 at 8). Plaintiff contends that this is because the ALJ incorrectly applied the regulatory standards of 20 C.F.R. § 416.920c by failing to explain the rejection of Dr. Bhalla's opinion based on the factors of supportability and consistency. (*Id.* at 1, 8, 10–11). The Court disagrees.

In addition to the abrogation of the "treating physician rule," as of March 2017, the amended SSA regulations stipulate that the ALJ must "consider all medical opinions according to several enumerated factors, including whether the opinion is supported by objective medical evidence and whether the opinion is consistent with the evidence from other sources." *Alonzo*, 2020 WL 1000024, at *3. Supportability and consistency are the "most important factors," and the ALJ must explain how he considered these two factors for a medical source's opinions. 20 C.F.R § 404.1520c(b)(3).

Based on this standard, as discussed above, the ALJ adequately described how he considered the supportability and consistency factors for Dr. Bhalla's opinion. For example, the ALJ indicated that Dr. Bhalla's medical opinion was not persuasive because

"mental status examinations, physical examinations and [Plaintiff's] reports to her [medical] providers" did not support it. (Doc. 14-3 at 31). To demonstrate this, as outlined above, the ALJ subsequently gave examples of examination results and Plaintiff's reports to medical providers showing a lack of support for and inconsistency with Dr. Bhalla's opinion. (*Id.*) For example, the ALJ cited a self-report that Plaintiff completed in February 2017, in which Plaintiff "admitted she shopped in stores, did the laundry, [and] prepared simple meals." (*Id.*) This contradicts Dr. Bhalla's opinion that Plaintiff could carry and lift "less than 10 pounds on an occasional basis" and that her ability to "grasp … and perform fine manipulation or reaching" was "limited." (*Id.*) The ALJ also cited a psychological evaluation from November 2018 in which Plaintiff indicated she "left her house every day." (*Id.*) This is inconsistent with Dr. Bhalla's assertion that Plaintiff could stand or walk only "15 minutes in an 8-hour workday." (*Id.*)

Further, the ALJ indicated that he determined Plaintiff's RFC after "careful consideration of the entire record." (*Id.*) To wit, for several pages prior to discussing Dr. Bhalla's opinion, though not always specifically labeling as such, the ALJ recounts specific consistent and inconsistent record evidence that both supports and undermines all the medical source's medical opinions, including Dr. Bhalla's. (Doc. 19-3 at 26–31); *Labine v. Comm'r of Soc. Sec. Admin.*, No. CV-19-04528-PHX-JZB, 2020 WL 6707822, at *4 ("the Commissioner's regulations specifically direct the ALJ to assess [Plaintiff's RFC] based on all of the relevant medical and other evidence … and to evaluate medical opinion evidence according to certain factors, which include the degree of support the opinion has from objective medical evidence … as well as its consistency with the record as a whole.") (citations and internal quotation marks omitted). As an example, the ALJ noted Dr. Gordon's November 2018 internal medicine evaluation, in which Plaintiff, upon physical examination, "sat in the chair comfortably," "had a normal gait and station," "did not use any assistive devices," and denied pain with "movement of the joints." (Doc. 14-3 at 28). This directly contradicts Dr. Bhalla's assessment that Plaintiff could sit only "30 minutes in an 8-hour workday" and walk only "15 minutes in an 8-hour workday." (*Id.*)

Thus, the Court disagrees with Plaintiff's contention that the ALJ "never compared Dr. Bhalla's findings or explanations with anything or made a discussion of such." (Doc. 18 at 10). *See Kennedy v. Colvin*, 738 F.3d 1172, 1178 (9th Cir. 2013) (stating that the ALJ is only required to discuss and evaluate the evidence that supports his conclusion; he is not required to do so in a specific location within the decision); *Labine*, 2020 WL 6707822, at *4 ("The Court reads the ALJ's decision as a whole, and not just one sentence of it in a vacuum. Thus, based on the ALJ's earlier analysis … the Court can 'reasonably discern' what evidence the ALJ is referring to when stating that [the evidence is unsupportive].").

Plaintiff makes additional arguments that the ALJ erred in failing to provide a valid explanation for rejecting Dr. Bhalla's opinion based on the factor of consistency. (Doc. 18 at 12). Specifically, Plaintiff contends that the ALJ's explanation did not accurately describe Plaintiff's function report from February 2017, nor a pain management report from July 2020. (*Id.* at 11). Plaintiff argues that this is because when the ALJ cited information from these reports to support his explanation, he omitted information from the same reports that substantiated Dr. Bhalla's opinion. (*Id.* at 11–12). Even if these arguments reflect error on the part of the ALJ, the Court concludes any such error is harmless. *See Treichler v. Comm'r of Soc. Sec.*, 775 F.3d 1090, 1099 (9th Cir. 2014). ("An error is harmless … if the agency's path may reasonably be discerned, even if the agency explains its decision with less than ideal clarity.") (citations and internal quotation marks omitted). Plaintiff contends the allegedly omitted information contained in the reports in question is consistent with Dr. Bhalla's opinion. (Doc. 18 at 11-12). However, the ALJ found Dr. Bhalla's opinion unpersuasive, and substantial evidence supports the ALJ's finding, as discussed above. (Doc. 14-3 at 31). Thus, the allegedly omitted information simply corroborates Dr. Bhalla's appropriately rejected medical opinion.

Plaintiff also argues that the ALJ further erred in failing to "consider the supporting treatment regarding [Plaintiff's] kidney disease." (Doc 18 at 12). Plaintiff contends that this was compounded by the ALJ's improper rejection of the medical opinion of Dr. William R. Huffman, whose opinion Plaintiff claims was consistent with Dr. Bhalla's. (*Id.*

at 14). The Court does not find that either argument has merit.

First, contrary to Plaintiff's assertion, prior to discussing Dr. Huffman's and Dr. Bhalla's opinions, the ALJ concluded that Dr. Sapin's opinion regarding Plaintiff's "nonsevere" impairments was "unpersuasive, as it is inconsistent with [Plaintiff's] chronic kidney disease and associated treatment." (*Id.* at 30). Second, Plaintiff states that the ALJ rejected Dr. Huffman's opinion in part because "he focused on range of motion and strength … but this misses the point of Plaintiff's condition: she alleges fatigue and lack of stamina due to chronic kidney disease." (*Id.* at 14). However, it is not the Court's responsibility to judge the ALJ's interpretation of the evidence of record where it is supported by substantial evidence and free from legal error. *See Andrews*, 53 F.3d at 1039 (stating that it is the ALJ's responsibility to resolve ambiguities and conflicts in, determine the credibility of, and draw logical inferences from the medical record). Here, the Court finds that the ALJ's rejection of Dr. Huffman's opinion and Dr. Sapin's opinion, in view of Plaintiff's kidney disease treatment, does not constitute reversible error. Further, as discussed previously, even when the evidence of record could result in more than one rational interpretation, "the ALJ's decision should be upheld." *Orn*, 495 F.3d at 630.

In sum, substantial evidence supports the ALJ's findings, and they are free from legal error, as the ALJ sufficiently describes how Dr. Bhalla's opinion lacks support from and is inconsistent with the medical evidence on record, in accordance with the relevant SSA regulations. Thus, the Court affirms the ALJ's decision.

### c. Further Proceedings

Plaintiff asks this Court to vacate the ALJ's decision and remand for further administrative proceedings. (Doc. 18 at 15). However, because the Court is affirming the ALJ's decision, the Court denies Plaintiff's request.

## IV. CONCLUSION

For the foregoing reasons,

**IT IS ORDERED** that the ALJ's decision is **AFFIRMED.**

**IT IS FURTHER ORDERED** that the Clerk of court shall enter judgment

accordingly.

Dated this 23rd day of June, 2022.

James A. Teilborg
Senior United States District Judge